**L.G. LEFLER, INC., d/b/a Defco Construction Company, Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 86–800.**

United States Court of Appeals,
Federal Circuit.

Sept. 16, 1986.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett and Stuart James, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for appellant.

Jon M. Wickwire, Wickwire, Gavin & Gibbs, P.C., Vienna, Va., submitted for appellee. With him on the brief was Anthony N. Palladino.

Before MARKEY, Chief Judge, DAVIS and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

L.G. Lefler, Inc., doing business as Defco Construction Company (Defco), prevailed in the Claims Court on its contract suit. 6 Cl.Ct. 514 (1984). The Government took no appeal from that decision. Defco then sought attorney fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. In an unpublished order, the Claims Court (Seto, J.) granted fees and expenses. No. 681–83C (Oct. 30, 1985). The Government appeals, but we affirm on the ground that Defco met the EAJA standards for receiving such fees and expenses from the Government.

## I.

In July 1982 the Veterans Administration (VA) invited bids for construction of an addition to the VA Medical Center in Tucson, Arizona. Defco erroneously interpreted the bid documents as permitting the use of foreign materials provided the cost of comparable domestic materials exceeded the foreign cost by at least 6%. Defco bid on that basis—including a substantial amount of structural steel fabricated in Japan. On opening of the bids, Defco was adjudged the low bidder and the contract was awarded to it on September 30, 1982.

At a preconstruction conference on October 14, 1982, Defco was told that no non-domestic products could be used on the project because none had been identified in its bid, as required by the Buy American Act. It was too late to cancel the steel order with the Japanese supplier, and Defco informed the VA (in October and November 1982) that it intended to use the foreign steel and documented the fact that that steel was more than 6% lower than

that of domestic steel. Defco requested a waiver of the Buy American Act under the regulations, and this was granted by the VA Administrator.[1]

At the same time, the VA decided to impose a credit against the contract price—because, it was said, of Defco's violation of the Buy American Act in casting its bid on the basis of foreign steel, without saying so. Accordingly, the contracting officer treated the VA's waiver as imposing a contract change and asked Defco to submit an equitable adjustment decreasing the contract price because of the permission given it to use the foreign steel. In July 1983, a unilateral change order was issued decreasing the contract price by $108,000.[2] Defco sought review of that unilateral decision, under the Contract Disputes Act, by filing a "direct access" suit in the Claims Court. On cross-motions for summary judgment, the Claims Court (Seto, J.) held for Defco and entered judgment in its favor for $108,000. 6 Cl.Ct. 514 (1984). The gist of the court's ruling was that (a) Defco's cost of performance was not lowered by the waiver of the Buy American Act's requirements; (b) Defco would have been the low bidder even if it had bid entirely on domestic materials; (c) the regulatory standards for waiver of the Buy American Act's requirements were clearly met; and (d) Defco did not receive any benefit or obtain any unfair advantage from its original violation of the Buy American Act. As we have said, the Government did not appeal this ruling.

The current appeal relates to Defco's fee application which followed upon its victory in the contract suit. Judge Seto awarded $26,321.76.

## II.

The EAJA authorizes a fee award to a "prevailing party" unless the position of the Government "was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). As recently amended, the Act directs that, in making the determination of substantial justification *vel non*, courts should take account, not only of the Government's litigation position in court, but also of the record with respect to the "action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(B) and § 2412(d)(2)(D) (Supp. III 1985). *Gavette v. Office of Personnel Management*, 785 F.2d 1568, 1579 (Fed.Cir.1986) (in banc), holds that, to be substantially justified, the Government's position must be *"clearly reasonable* in asserting its position, including its position at the agency level, in view of the law and the facts" (emphasis in original).

There is no doubt, and no question, that Defco was the "prevailing party"; the Claims Court held it entitled to all the relief it requested. *See Keely v. Merit Systems Protection Board*, 793 F.2d 1273, 1275 (Fed.Cir.1986); *Keely v. Merit Systems Protection Board*, 760 F.2d 246, 248 (Fed. Cir.1985); *Austin v. Department of Commerce*, 742 F.2d 1417, 1419–20 (Fed.Cir. 1984). The only issues are whether the Government's position was "substantially justified" or whether "special circumstances make an award unjust."

In this appeal the United States stresses the latter standard, urging, first, that this contract case presented a legal issue of first impression involving the relationship of the regulation implementing the Buy American Act with the Changes clause in the contract, and, second, that the Comp-

---

**1.** A regulation implementing the Buy American Act expressly authorizes such a waiver when the bid or proposal offers non-domestic construction material costing 6% less than domestic material—unless the particular circumstances warrant otherwise. *See* 41 C.F.R. § 1–18.602–1(c), and § 1–18.603–1 (1982).

**2.** Previously, the VA's Inspector General completed a special inquiry into and report on the facts and circumstances relating to the VA's decision to waive the Buy American Act. The Inspector General's report (dated March 21, 1983) indicated that (1) Defco did not receive a direct financial gain by using foreign steel; (2) Defco's bid was based on the cost of foreign steel; and (3) Defco would have remained the lowest bidder even if it had based its bid on the higher cost of domestic steel.

troller General had earlier taken a parallel position in cases the Government deemed similar. We are also directed to the House Committee's reason why the alternative standard—where "special circumstances make an award unjust"—was included in the EAJA:

> This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4953, 4984, 4990. It is said that here both the VA and the Government's litigators in the Claims Court advanced in good faith a novel but credible position which deserved ventilation.

In the circumstances of this case, we reject this contention that it would be unjust to award fees or that the Government's position was substantially justified. In doing so, we follow the established rule that the Claims Court's factual findings (in its ruling on the merits and its Memorandum Order on fees and expenses) must be accepted unless clearly erroneous. *Alger v. United States,* 741 F.2d 391, 394–95 (Fed.Cir.1984). We also take account, as the amended EAJA directs us to do, of the course of proceedings before the VA, as well as the subsequent litigation in the Claims Court. Similarly, we give some weight to the fact that the contract case could be decided, and was decided in the Claims Court, on cross-motions for summary judgment. Congress specifically mentioned that factor in enacting the EAJA. S.Rep. No. 253, 96th Cong., 1st Sess. 6–7 (1979); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4989–90.[3]

Our conclusion that the Claims Court should be affirmed rests on a combination of elements, factual and legal. Defco, in good faith though mistakenly, interpreted the bid documents as allowing it to use foreign materials as the basis for its bid (without saying so) if the cost of comparable domestic materials exceeded that of the foreign goods by at least 6%. The foreign steel Defco included did meet that standard. The Buy American Act regulations expressly provided that, in that situation, a waiver of the Act *"shall be made"* (emphasis added) unless it would be advantageous to the Government not to grant the waiver. *See* 6 Cl.Ct. at 518–19. The waiver was granted in this case. There is, moreover, no doubt, (and the Claims Court so held) that it would not be advantageous to the Government to have refused the waiver in this case. The VA's own Inspector General found that (i) Defco's bid was actually based on the cost of foreign steel, (ii) Defco was in fact the low bidder, (iii) Defco would have still been the lowest bidder even if it based its bid on the higher cost of domestic steel, and (iv) Defco did not receive any direct financial gain from using the foreign product and did not gain an advantage over the other bidders. It is similarly plain that the Government suffered no loss or inconvenience from the waiver of the Buy American provision of the contract, and that the change order should not have been issued.[4] So much is now indisputable in view of the Claims Court's unappealed decision on the merits of Defco's suit.

The Government says, however, that until the Claims Court decided this case it was not known, and there was no court decision, that the VA could not obtain a credit,

---

3. The committees said:
A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

4. The Inspector General's findings were known to the VA at the time the change order was finalized. The report also stated that no evidence existed showing that Defco realized a windfall profit from the use of foreign steel and that its violation of the Buy American Act was not intentional but was in good faith.

under the Changes clause, because of the waiver and deletion of the Buy American Act's directive. The argument is that, in those circumstances, it was credible and appropriate to defend this case in the Claims Court—that the Government was substantially justified and that a fee award would be unjust.

The complete answers are that, in the known circumstances of this case, both the VA and the Department of Justice should clearly have recognized that (a) a waiver was compelled by the regulations which are clear on their face, (b) there was no ground for the change order issued by VA because the Government lost nothing and Defco gained nothing, and (c) though Defco was initially in technical (but good faith) violation of the Buy American Act, that technical violation had no real effects and was cured shortly after the opening of the bids. There was, in short, no tenable ground for the issuance of the change order or for later defending it in court. Conversely, there was no need for a judicial decision on the merits of this case. The Changes clause is a contract provision—framed to facilitate proper performance of the contract—and is not designed to penalize the contractor for a technical, good faith violation of a statute or regulation where that infraction did not advantage the contractor in any way (including a decrease in cost via the violation), or disadvantage the Government (including a cost increase because of the violation).[5]

The Government emphasizes, in support of its proceedings in this case, that the Comptroller General had previously decided two cases sustaining contract changes said to be comparable to those imposed here by the VA. *Beckman Instruments, Inc.*, No. B–177649 (Comp.Gen. March 12, 1973); *Philadelphia Nail & Wire Co.*, No. B–154501 (Comp.Gen. Aug. 11, 1964). But, as Judge Seto pointed out in the Claims Court, these holdings were quite insufficient precedent for the current situation.[6] Neither ruling purported to lay down a general rule, relying instead on the particular facts of those instances. In *Beckman Instruments,* the contractor based its bid on the use of higher-priced domestic materials and was understandably held to obtain a gain when a waiver permitted it to use lower-cost foreign materials. *Philadelphia Nail* did not consider whether the contractor based its bid on foreign materials and apparently assumed that the contractor was somehow advantaged by using non-domestic materials. Neither case involved a waiver and change order after the procuring agency already knew—as the VA did here—that the contractor gained no benefit from its defective bid and there was no interference with the competitive process.

The end-result is that we have no reason to reject the Claims Court's decision in awarding attorney fees and expenses in this case.[7]

AFFIRMED.

---

**5.** There are no other equitable considerations alleged to dictate that a fee award would be unjust.

**6.** We decide as a matter of law the strength of the Government's legal case and of the precedents on which it relied. *See Kay Mfg. Co. v.*

*United States,* 699 F.2d 1376, 1379 (Fed.Cir. 1983).

**7.** The Government does not contest the award of fees based on a higher hourly figure than $75.