**William J. WEBB, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–698.

United States Court of Veterans Appeals.

Oct. 25, 1994.

William J. Webb, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Richard Mayerick, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, MANKIN, and HOLDAWAY, Judges.

KRAMER, Judge, filed the opinion of the Court, in which MANKIN, Judge, joined. HOLDAWAY, Judge, filed a dissenting opinion.

KRAMER, Judge:

The appellant, William J. Webb, appeals an April 21, 1993, decision of the Board of Vet-erans' Appeals (BVA or Board) which held that it had no appellate jurisdiction over fee-basis determinations made by a VA medical center (MC), since such determinations do not involve a question of VA benefits. This Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the April 1993 Board decision and remand the matter for proceed-ings consistent with this opinion.

**I.**

The appellant had service in the U.S. Navy from July 1969 to July 1973. Record (R.) at 24. He was service connected for right eye uveitis with secondary cataract in October 1973 at 10% disabling, which was increased to 20% in September 1976. R. at 36–37, 41. The earliest reference in the record on ap-peal to the appellant's approval for outpatient fee-basis status appears in a VA Progress Note dated January 8, 1973, which states, "Approved for visiting local ophthalmologist on fee basis." R. at 27. Subsequent VA Progress Notes, dated from March 1980 through March 1988, indicate further approv-als for fee basis care by reason of "geograph-ic hardship." R. at 30–31. The record also contains executed VA forms authorizing fee-basis outpatient medical services for the ap-pellant's eye condition with "period[s] of va-lidity" from January 1974 through April 17, 1991. Supplemental Record (Suppl.R.) at 1–4, 6–7, 10. The record indicates that the appellant has resided at the same address since, at least, 1973. *Compare* R. at 34 and R. at 73, 80.

The appellant was notified on July 8, 1991, by the Medical Administration Service that his fee-basis identification card was cancelled effective August 30, 1991. Suppl.R. at 9. The letter stated, "It has been determined that the services that you require can be provided by the VA[MC] at Northport, New York." *Id.* In accord with the appellate information provided in the July 1991 letter, the appellant appealed the decision to the Director of the Northport MC. *Id.*; R. at 67. A subsequent "appeal hearing decision," dated April 27, 1992, stated that the Fee Basis Committee and the Appeal Board met, reviewed the medical records of the appel-

lant, and confirmed their prior determination that "the care Mr. Webb requires is available within our [MC] at our Op[h]thalmology Clinic." R. at 77; *see also* R. at 84.

The record contains statements of the appellant that travel to a VA facility constituted geographical hardship due to an approximate 140– to 150–mile round-trip distance to the VA facility that he used (probably in New York City). R. at 39, 48. He later testified that one-way mileage to the Northport VA facility was 40.9 miles. R. at 80, 98. The appellant also addressed at length in his substantive appeal to the BVA the issue of the hardship associated with traveling to the Northport facility:

My op[h]thalmologist and your transient op[h]thalmologist agreed that to do a thorough exam[ination] of my eye, it must be dilated, which causes blurred vision. I have always brought a driver with me for my eye appointments, so I could be driven home. When I was allowed fee basis I could make appointments at convenient hours with my op[h]thalmologist after work and in the evening, or emergency appointments as needed. My op[h]thalmologist is within ten minutes driving distance from my home....

Now to be seen by the [VA] eye clinic I must make an appointment, take at least 5 hours off from work, and have my wife take the day off from work to drive me home. It took me 1 hour 15 minutes to drive to the [VA] from my home ... on a weekday at mid-day.... I contacted Suffolk County Public Transportation.... I would spend 2 hours 40 minutes on a bus and 40 minutes walking to the bus, totaling 3 hours 20 minutes for a one way trip to the [VA] Hospital in Northport. If I use public transportation it would not require my wife to take a day off from work but would mean I would need a full day off from my job and spend $5.50 in bus fare and 6 hours 40 minutes in travel time round trip. This would not include the possibility of additional time waiting for a bus, missing a bus or missing a final scheduled bus to my area due to spending excessive time at the [VA].

R. at 74–75; *see also* R. at 80, 98.

The BVA dismissed the appellant's appeal for lack of jurisdiction. R. at 6. The Board adopted the reasoning of a 1986 Board decision which it summarized as follows:

[I]t was held that a decision as to whether to authorize (or, as in this case, continue) private fee-basis care rather than have the veteran receive the same medical care from the VA did not involve a substantive benefit for veterans, but was a choice as to which of two alternative types of available medical care would be provided the claimant. The Board then concluded that the latter question was in the exclusive administrative discretion of the Department of Medicine and Surgery (currently the Veterans Health Administration).

R. at 5–6.

## II.

As noted *supra*, the BVA premised its dismissal for lack of jurisdiction on the determination that the issue of whether to continue private fee-basis care did not involve a "substantive benefit" for veterans. In so concluding, the BVA, inter alia, looked to the regulation addressing its jurisdiction, 38 C.F.R. § 20.101. Section 20.101, in pertinent part, states:

(a) *General.* All questions of law and fact necessary to a decision by the Secretary ... under a law that affects the provision of benefits by the Secretary to veterans ... are subject to review on appeal to the Secretary. Decisions in such appeals are made by the [BVA]....

. . . .

(b) *Appellate jurisdiction of determinations of the Veterans Health Administration.* The Board's appellate jurisdiction extends to questions of eligibility for hospitalization, outpatient treatment, and nursing home and domiciliary care; for devices such as prostheses, canes, wheelchairs, back braces, orthopedic shoes, and similar appliances; and for other benefits administered by the Veterans Health Administration. Medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual, are not

adjudicative matters and are beyond the Board's jurisdiction. . . .

38 C.F.R. § 20.101 (1993); *see also* 38 U.S.C. §§ 511(a), 7104(a).

The first sentence of § 20.101(b) states that the Board's jurisdiction extends to "questions of eligibility for ... outpatient treatment." Nevertheless, the BVA failed to address whether eligibility for fee-basis outpatient services is such a question, and, if so, why it did not have jurisdiction. *See* 38 U.S.C. §§ 7104(a), (c), (d)(1), 7261(a)(3)(A), (a)(3)(D); *Austin v. Brown,* 6 Vet.App. 547, 552 (1994). This is especially relevant since 38 U.S.C. § 1703 provides for fee-basis medical services, 38 U.S.C. § 1712(a)(6) authorizes such fee-basis medical services to be provided on an outpatient basis, and 38 U.S.C. § 1701(6) defines "medical services" to include "treatment." *See* 38 U.S.C. §§ 1701(6), 1703, 1712(a)(6); 38 C.F.R. §§ 17.50b(a), 17.99 (1993). Upon remand, the BVA shall address the language of § 20.101(b), and provide an adequate statement of reasons or bases to support its conclusions. *See* 38 U.S.C. § 7104(a), (c), (d)(1).

The Court notes that the Board's construction of the appellant's claim as not involving a "substantive benefit" appears to state, in essence, that, pursuant to § 20.101, a benefit determination is reviewable, but a medical determination is not. Such a statement and the regulation itself raise the further question of whether a medical determination is a benefit since the regulatory definition of a "benefit" is "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the [VA] ... pertaining to veterans," 38 C.F.R. § 20.3(e) (1993). *Cf. Similes v. Brown,* 6 Vet.App. 555 (1994). Because the Court decides this case on the basis stated in the preceding paragraph, it does not address this further question.

### III.

The dissent would avoid the jurisdictional issue by simply affirming the BVA decision on the grounds that the claim is, in essence, not well grounded because 38 U.S.C. § 1703(a) provides no right to fee-basis service, and alternatively, because there is insuf-

ficient evidence of geographical inaccessibility. Contrary to the dissent, we cannot conclude on the record before us that the appellant's claim is not well grounded within the meaning of 38 U.S.C. § 5107(a). *See* 38 C.F.R. § 3.159(a) (1993).

The Secretary is authorized under 38 U.S.C. § 1703(a) to contract with non-Department facilities when either of two prongs is satisfied—Department facilities are incapable of furnishing economical care or services because of geographical inaccessibility *or* such facilities are incapable of furnishing the care or services required. While it is uncontested that the evidence of record shows, with respect to the latter, that Department facilities are capable of furnishing the care or services required by the appellant, nevertheless, there is evidence, with respect to the former, that: the appellant received fee-basis care from 1974 to 1991; at a minimum from 1980 to 1988, the appellant's receipt of such care was premised upon geographical hardship; the appellant's residence has remained the same since 1974; and the appellant has stated that the use of the Northport VA facility presents a geographical hardship, especially given the nature of his disability. The Court is not prepared to hold, at this time, based on this evidence, and without an adequate statement of reasons or bases by the BVA for its determination, that the appellant's claim does not present a "plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990); *see also Robinette v. Brown,* —— Vet.App. ——, ——, No. 93–985, slip op. at 10–11, 1994 WL 706228 (Sept. 12, 1994); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) ("[w]here the issue is factual in nature, ... competent lay testimony, including a veteran's solitary testimony, may constitute sufficient evidence to establish a well-grounded claim"); *King v. Brown,* 5 Vet.App. 19, 21 (1993) (evidence submitted in support of a claim "must be presumed true for purposes of determining well[ ]groundedness").

### IV.

For the reasons stated above, the BVA decision of April 1993, is VACATED and the

matter is REMANDED for proceedings consistent with this opinion.

HOLDAWAY, Judge:

I must respectfully dissent. The issue presented by this appeal is whether the appellant, who is entitled to outpatient care for his service-connected disability, has a further, and discrete entitlement to have that care delivered by his private physician and paid for by the Secretary of Veteran's Affairs. In my opinion, the decision to furnish "fee-basis service" is, in the plain language of 38 U.S.C. § 1703 by use of the word "may," a matter wholly within the Secretary's discretion. Moreover, the purpose of the statute that permits fee service within specific and limited circumstances was to provide for the efficient and economical use of departmental medical resources and was intended to be a *limitation* on a veteran's use of non-Department facilities on a fee basis, not an expansion of his benefits by creation of a discrete right to nondepartmental medical services. *See* S.REP. No. 1206, 94th Cong., 2d Sess. 75 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6366. Finally, assuming arguendo that a veteran has a limited "right" to such service, the appellant has, in this case, fallen well short of establishing a well-grounded claim for such "right."

The statute involved, 38 U.S.C. § 1703(a), states as follows: "When Department facilities *are not capable of furnishing economical hospital care or medical services because of GEOGRAPHICAL INACCESSIBILITY ...,* the Secretary as authorized in section 1710 or 1712 ... *MAY* contract...." (emphasis and capitalization added). On the face of the statute, therefore, the use of the word "may" connotes complete and unfettered discretion in the Secretary. There is not the slightest intimation that the veteran has any right whatsoever, or even a part to play, in determining the method of delivering the outpatient services to which he is entitled. Congress could have easily used the words "shall" or "will" or some other expression that mandated or implied a "right." It did not do so. Moreover, the legislative history discloses that no such right was ever intended.

Section 1703 was enacted in 1986 by Public Law 99–272, the Budget Reconciliation Act. According to the legislative history, the circumstances under which VA can contract with non-VA facilities in section 1703 "are identical to those specified in present section 601(4)(C) and include the universally applicable prequisite [sic] to the use of contract care that the VA be unable to furnish economic care directly because of geographic inaccessibility or be incapable of directly furnishing the care required." 1986 U.S.C.C.A.N. 534. The legislative history of section 601(4)(C) indicates clearly that the purpose of the statute was to ensure the efficient and economical use of Department medical facilities:

> Just as significant as the rapid growth in outpatient staff visits during the past decade is the exceptional growth and size of the fee-basis program. Neither the statute nor VA regulations distinguish very carefully between fee-basis outpatient care eligibility for service-connected and for non-service-connected veterans. As competition continues to increase for relatively limited resources in the VA system, it is imperative that such distinctions be drawn.... Section 302(b)(2) and (3) of the Committee Bill amends clause (4) [of section 601] to make clear that the VA may contract for fee-basis service only when VA or other Federal hospitals or clinics "are not capable of furnishing economical care because of geographical inaccessibility or of furnishing the particular type of care of services required". The effect of this new language is to limit the authorization of fee-basis service—for service-connected or non-service-connected disabilities—to those situations when regular VA hospitals and clinics (or other Federal facilities) are genuinely unable to provide the needed services themselves.

S.REP. No. 1206, 94th Cong., 2d Sess. 75 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6366. Far from creating an additional right, this provision was intended to limit fee-basis service to *only* circumstances where the Department was *unable* to provide economical services; the word "economical," given the context of the quoted legislative purpose, seems clearly to mean economical to the Depart-

ment. Therefore, the use of the word "may," both its plain meaning and in the context of the legislative history, shows that the BVA was undoubtedly correct in concluding in this case that the appellant's "claim" for fee services was not a claim for any recognized benefit.

Assuming arguendo that the appellant has a possible claim for patient fee services, he nonetheless failed to present a well-grounded claim. As the majority concedes, the only question presented is whether fee services were possible because of geographical inaccessibility. If, given the averments of the claimant and assuming them to be true, a claim is not "possible," then, ipso facto, the claim is not well grounded. *See Murphy v. Derwinski*, 1 Vet.App. 78 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). Somehow in their analysis of the "possibility" of such a claim, the majority loses sight of the statutory words and judicially substitutes "geographical hardship." They base such "hardship" on the fact that the appellant was some "40 miles" from the VA facility. To state the obvious, inaccessibility presumably means just that. It does not mean hard to get to or inconvenient to get to.

But even if the statute used the word "hardship," it is a considerable stretch of the definition of "hardship," which my dictionary defines as "extreme privation," AMERICAN HERITAGE DICTIONARY 594 (2d College Ed.1985), to conclude that traveling 40 miles could conceivably, or possibly, ever be a true hardship. That would come as a considerable surprise to many, many veterans, probably the majority, who live 40 miles or more from VA medical facilities. Second, to focus on the statutory requirement, the appellant has never testified, averred, or even come close to implying that the Department facilities were "inaccessible," as that word is defined in the dictionary or in plain everyday speech. Indeed, the hearing at which he testified was *at the location* which the majority now says was possibly inaccessible. Given the most liberal of interpretations of his testimony, the appellant has made a claim of geographical "inconvenience." But that is far short of geographical "inaccessibility" or even hardship, if the judicial legerdemain of the majority is accepted. To judicially define

a medical complex that is 40 miles distant in New York State, a reasonably well-settled state with a good road system, as raising a possible issue of "inaccessibility" is a reach, even for an appellate court. Absent some evidence of inaccessibility, even if it were only the appellant's ipse dixit averment, it is difficult to see how this claim, based as it is entirely on inconvenience, can be well grounded as to the statutory requirement of inaccessibility.

In summary, this is a simple case of statutory interpretation. It seems clear to me both from the plain language of the statute as well as the legislative history that is available that the statute relied on by the appellant for his "claim" did not create a recognizable and discrete benefit, but was rather intended as a limitation on the use of private fee medical care. The purpose of the statute was to give the Secretary discretion so that there would be the fullest possible use of departmental resources. Moreover, even assuming that the discretion so clearly written in the statute is somehow fettered by the veteran's "right" to claim for fee services, the appellant's own testimony in filing the claim refutes the very essence of such a "claim," i.e., the inaccessibility of the departmental services. It is, therefore, not well grounded.