**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 96-302

DONALD S. SWINEY, APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided   August 14, 2000   )

*Morton Hollander*, of Bethesda, Maryland, was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Thomas A. McLaughlin*; and *Michele Russell Katina*, all of Washington, D.C., were on the pleadings for the appellee.

Before NEBEKER, *Chief Judge*, and HOLDAWAY and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court in which NEBEKER, *Chief Judge*, joined as to the award.  NEBEKER, *Chief Judge*, filed a separate opinion concurring in part. HOLDAWAY, *Judge*, filed a dissenting opinion.

STEINBERG, *Judge*: Before the Court is the appellant's December 2, 1998, application, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), for attorney fees and expenses in the amount of $32,534.44, and his March 26, 1999, supplemental EAJA application for attorney fees in the amount of $718.75.  For the reasons that follow, the Court will grant the 1998 EAJA application in a reduced amount and grant the 1999 supplemental EAJA application in full.

**I. Relevant Background**

The appellant appealed from two decisions of the Board of Veterans' Appeals (Board or BVA), both dated March 22, 1996.  In the first decision, the Board denied a schedular rating in

excess of 50% for cluster headaches, denied a rating of total disability based on individual unemployability (TDIU), and determined that the veteran was not entitled to an extraschedular evaluation under 38 C.F.R. § 3.321(b)(1) (1999). In the second decision, the Board determined that it did not have jurisdiction to review a denial by a Department of Veterans Affairs (VA) regional office (RO) of the appellant's claim for eligibility for fee-basis-outpatient care and dismissed that appeal. *See Swiney v. West*, No. 96-302, 1998 WL 637212, at *1 (Vet. App. Aug. 31, 1998).

On December 13, 1996, the Secretary filed a motion to remand as to the TDIU and extraschedular-rating claims, to deem abandoned the schedular-rating-increase claim, and to stay the proceedings pending a decision in *Quigley v. West*, No. 94-1187, 1998 WL 43004 (Vet. App. Jan. 9, 1998), as to BVA jurisdiction to consider claims for fee-basis care. On December 16, 1996, the appellant filed a motion to consolidate this appeal with that in *Quigley*. On December 23, 1996, the Court, by single-judge order, denied the appellant's motion to consolidate (stating that the appellant could seek leave to file an amicus brief in *Quigley* and/or the similar case of *Webb v. West*, No. 96-502, 1998 WL 778288 (Vet. App. Oct. 15, 1998)), held in abeyance the Secretary's motion to remand, and granted the Secretary's motion to stay proceedings. On December 27, 1996, the appellant filed a response, opposing the Secretary's motion to remand as to the rating claims. The Court then modified its December 23, 1996, order, inter alia, to hold in abeyance the Secretary's motion to stay proceedings.

On January 7, 1997, the appellant filed in the appeal of *Quigley*, *supra*, a motion for leave to file on behalf of himself and the appellant in *Webb*, *supra*, an amicus brief on the issue of BVA jurisdiction to review RO denials of eligibility for fee-basis care. After the Court granted that motion in *Quigley*, the appellant filed in that case an amicus brief and a notice of supplemental authorities.

On March 19, 1997, the Court denied the Secretary's motion to remand as to the TDIU and extraschedular-rating claims and granted the Secretary's motion to stay proceedings as to the fee-basis-care issue pending a decision in *Quigley*. Briefing proceeded on the rating issues; the appellant filed a brief and a reply brief, and the Secretary filed a brief. On November 19, 1997, the Court dissolved the stay as to *Quigley*. The appellant then filed a supplemental brief, incorporating the arguments made in the *Quigley* amicus brief, and a reply brief, and the Secretary filed a brief. Thereafter, on May 12, 1998, the Court issued an opinion in *Meakin v. West*, which decided the fee-

basis-care issue in favor of the veteran. *Meakin*, 11 Vet.App. 183 (1998). The appellant then filed an unopposed motion to reverse as to that issue. On August 31, 1998, in a single-judge order, the Court deemed abandoned the schedular-rating-increase claim; vacated the BVA decision as to the TDIU and extraschedular-rating claims, on the grounds that the Board had failed to apply and had incorrectly applied, respectively, pertinent regulations; and reversed the BVA decision as to the fee-basis-care issue and remanded those matters for readjudication under the appropriate law and regulation. *Swiney*, 1998 WL 637212, at *1, *3.

On December 2, 1998, the appellant filed a timely application for EAJA fees and expenses, in which he stated that he was a prevailing party and was eligible for an award, and alleged that the Secretary was not substantially justified. The appellant's counsel's itemization of services rendered included 259.05 total hours for a total fee request of $32,381.00 and expenses of $153.44. The Secretary argues in response only that the amount of the award should be reduced by $7,000.00 because the 56 hours spent in preparing the *Quigley* amicus brief was unreasonable and should thus be denied. On March 26, 1999, the appellant filed a reply, in which he requests additional attorney fees of $718.75 for 5.75 hours required for the preparation of that reply. On October 25, 1999, the Court ordered the appellant to file a supplemental brief as to his status as a prevailing party and the Secretary to file a supplemental brief as to substantial justification. Both parties responded to that Court order and then replied to each other's supplemental briefs.

## II. Analysis

### A. Jurisdiction

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). The appellant's December 2, 1998, EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B) and satisfies any jurisdictional content requirements that apply, because the application contains the following: A showing that he is a prevailing party by virtue of the Court's reversal and remand action and that he is a party eligible for an award under the EAJA because his net worth does not exceed $2,000,000; an allegation that the position of the Secretary was not substantially justified; and an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Fritz v. West*, 13 Vet.App. 190, 195

(1999); *Chesser v. West*, 11 Vet.App. 497, 499 (1998); *Bazalo v. Brown*, 9 Vet.App. 304, 308 (1996) (en banc), *rev'd on other grounds sub nom. Bazalo v. West*, 150 F.3d 1380, 1384 (Fed. Cir. 1998) (holding that "statement that [appellant] is a prevailing 'party' satisfies eligibility requirement for jurisdictional purposes").

### *B. Prevailing Party*

As to the merits of this application, the Secretary, in his February 24, 1999, response to the appellant's EAJA application, specifically concedes that the appellant was a prevailing party. Response (Resp.) at 3. Nonetheless, as noted above, the Court ordered the appellant to provide supplemental briefing on this issue, and allowed the Secretary to file a response; therefore, we will address prevailing party status.

As a general rule, the "prevailing party requirement of the EAJA is satisfied when a remand is obtained because it represents 'succe[ss] on any significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing suit." *Stillwell v. Brown*, 6 Vet.App. 291, 300 (1994) (citing *Shalala v. Schaefer*, 509 U.S. 292 (1993)); *see also Similes v. West*, 11 Vet.App. 115, 118 (1998) (holding that appellant satisfied prevailing party requirement where application showed that appeal led to settlement agreement); *Nagler v. Derwinski*, 1 Vet.App. 297, 307 (1991). An outright victory is not always a prerequisite. *See Stillwell*, 6 Vet.App. at 301. "It is enough for the Court to make some 'substantive determination in [the] appeal, based upon the record, the parties' pleadings, and the Court's' precedent, that is favorable to the appellant." *Lematta v. Brown*, 8 Vet.App. 504, 508 (1996); *see also Smith (Wilfred) v. Brown*, 8 Vet.App. 327, 328, 330-31 (1995) (recognizing that appellant was prevailing party under *Shalala* and *Stillwell*, both *supra*, where appellant had initiated settlement negotiations for remand, negotiations had failed, and appellant had then argued for reversal, but Court had vacated BVA decision and remanded claim). The Supreme Court has held:

> The touchstone of the prevailing party inquiry must be the ***material alteration of the legal relationship of the parties*** in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under *Hensley*[ *v. Eckerhart*, 461 U.S. 424 (1983)], not to the availability of a fee award vel non.

4

*Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989) (emphasis added); *see also Farrar v. Hobby*, 506 U.S. 103, 109-14 (1992) ("prevailing party inquiry does not turn on the magnitude of the relief obtained").

In the instant case, the appellant received a reversal as to one claim and a vacatur as to the others, rulings that the Court finds to have been "favorable to the appellant". *Lematta*, *supra*. Several factors influenced the Court's decision here. First, all of the appealed claims were remanded, resolutions which materially changed the "legal relationship" between the Secretary and the appellant, *Texas State Teachers Ass'n*, *supra*, from one of claim denial to a continuing adjudicatory process. Second, the appellant states that he initially attempted to negotiate a settlement with the Secretary, including a remand as to the rating claims, and that his attorney "made seven additional attempts to pursue and work out a compromise or settlement", but was unsuccessful each time. Jan. 19, 2000, Resp. at 2-3. The Secretary does not refute this contention. The appellant subsequently argued for reversal as to all of the claims; however, the Court reversed only as to the fee-basis-care claim, vacated and remanded as to the TDIU and extraschedular-rating claims, and deemed abandoned the schedular-rating-increase claim. Third, the Secretary initially conceded the appellant's prevailing-party status and only after the Court ordered supplemental briefing did the Secretary raise a question as to that issue. Fourth, in his March 27, 2000, response, the Secretary requests that the Court redefine the term "prevailing party" in order to exclude the appellant from prevailing-party status. In the alternative, he argues that, under the Court's current caselaw, the question of the difference between a reversal and a remand would not affect prevailing-party status but would more properly be considered during the determination of the reasonableness of the amount of the fees requested.

The Secretary's last argument alone is sufficient to prompt the Court to conclude that the appellant is a prevailing party. Although it could, of course, seek to clarify previous caselaw, a panel of this Court cannot transform the prevailing-party-status analysis from whether the appellant gained ***some of the benefit*** sought in bringing the suit, *see Similes* and *Stillwell*, both *supra*, to whether the "remand ordered by the Court . . . result[ed] in the ultimate <u>merits</u> relief requested, [or] . . . establish[ed] any type of entitlement to the benefits sought", as the Secretary now proposes. Mar. 27, 2000, Resp. at 7. Nor is the Court inclined toward any such transformation that would exclude this

5

appellant from prevailing-party status. We do not agree with the Secretary, or our dissenting colleague, that the appellant has not achieved significant success by virtue of the Court's remand as to the two issues in question, which on remand remain very much alive rather than being foreclosed as they would have been had the Court affirmed the BVA decision. In the context of adjudication in this Court, outright reversal on the merits has been very rare. *See* William F. Fox, Jr., *An Analysis of the Jurisprudence, Organization, and Operation of the Newest Article One Court* 70-77 (2d. ed. 1998). That is because this Court can reverse as to factual determinations, which are the matters involved in the vast majority of appealed cases, only where the Court finds that the Board's factfinding is "clearly erroneous" under 38 U.S.C. § 7261(a)(4), *see*, *e.g.*, *Beaty v. Brown*, 6 Vet.App. 532, 538-39 (1994) -- that is, where it lacks a plausible basis in the record, *see Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (discussing section 7261(a)(4)) -- or finds under 38 U.S.C. § 7261(a)(3) that the Board has made an error of law that **requires** the award of a benefit without further examination of the facts or readjudication after the duty to assist is carried out, *see*, *e.g.*, *Bentley v. Derwinski*, 1 Vet.App. 28, 31 (1990). Where the Court remands for readjudication in order for the Secretary to comply with VA's 38 U.S.C. § 5107(a) duty to assist, *see Hayre v. West*, 188 F.3d 1327, 1331-32 (Fed. Cir. 1999), or the Board's 38 U.S.C. § 7104(d)(1) obligation to provide an adequate statement of reasons or bases for its decisions, *see Gilbert*, 1 Vet.App. at 56-57, the result on remand may often be the award of a VA benefit. Accordingly, based on this Court's current prevailing-party caselaw, the Court holds, as the Secretary admitted in his most recent pleading, that under current caselaw the appellant is a prevailing party.

Furthermore, as the Supreme Court has held: "Where [a material alteration of the legal relationship of the parties] has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under [*Eckerhart*, *supra*], not to the availability of a fee award vel non." *Texas State Teachers Assoc.*, 489 U.S. at 792-93. Hence, as the Secretary has also agreed, because the vacatur of the BVA decision has materially changed the legal relationship of the parties, it matters not as to the prevailing-party analysis that the appellant sought a reversal but gained only a vacatur; rather, that matter is to be considered as a part of the Court's consideration of the reasonableness of the fee, if an award is made.

6

## C. Substantial Justification

Because the appellant has alleged that the Secretary's position was not substantially justified, Application at 3-5, the Secretary "has the burden of proving that [his] position was substantially justified in order to defeat the appellant's EAJA application". *Stillwell*, 6 Vet.App. at 301. He must carry this burden as to his actions both in the administrative stage (BVA adjudication) and in the litigation stage (before this Court). *See Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *ZP v. Brown*, 8 Vet.App. 303, 304 (1995). Although the Secretary did not even address substantial justification in his original response, the Court ordered him to address that issue in supplemental briefing. The Secretary now argues that his positions at both the administrative and litigation stages were substantially justified, respectively, because on the question whether the Board had jurisdiction to consider the appellant's fee-basis-care claim the BVA decision "was not contrary to precedent then standing and it relied upon historical interpretations of VA regulations" and "the Secretary cooperated in speedily resolving the litigation phase of this case based upon recent changes and evolutions in the Court's caselaw." Feb. 4, 2000, Resp. at 3-4.

In *Stillwell*, the Court noted that "'a position can be justified even though it is not correct, and [that] . . . it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Stillwell*, 6 Vet.App. at 302 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). The Court provided further amplification in *Stillwell*, as follows:

> Two special circumstances may also have a bearing upon the reasonableness of the litigation position of the VA, and of the action or inaction by the VA at the administrative level. One is the evolution of VA benefits law since the creation of this Court that has often resulted in new, different, or more stringent requirements for adjudication. The second is that some cases before this Court are ones of first impression involving good faith arguments of the government that are eventually rejected by the Court.

*Stillwell*, 6 Vet.App. at 303. "To determine whether the Secretary has demonstrated that his position was "reasonable' during the administrative and litigation stages, the Court looks, respectively, to the 'relevant, determinative circumstances' and to the 'circumstances surrounding the resolution of the dispute'." *Jackson v. West*, 12 Vet.App. 422, 426 (1999).

7

***1. Fee-Basis-Care Claim.*** As to the administrative stage, the question is whether the Secretary's long-standing interpretation of the applicable statutory and regulatory provisions was substantially justified. The Court remanded based on new Court caselaw, *Meakin*, *supra*, that clarified an issue of first impression before the Court. *See Swiney*, *supra*. In *Felton v. Brown*, this Court held:

> We emphasize, however, that we are not adopting a per se rule that a case of first impression will always render the Government's position substantially justified. On the contrary, whether a case is one of first impression is only one factor for the Court to consider. In *Edwards v. Griepentrog*, 783 F. Supp. 522, 525 (D. Nev. 1991), the United States District Court for the District of Nevada wrote: "[T]he EAJA does not suggest that an agency's position is substantially justified because its policy goes years without challenge or change."

*Felton*, 7 Vet.App. 276, 281 (1994). The Court in *Felton* went on to note that EAJA fees would be available where the applicable statutory or regulatory provisions provided one, plain meaning, to which the government's interpretation was clearly contrary. *Id*. at 281-82.

In the instant case, as in *Felton*, there is no statement in the underlying merits decision that indicates whether the Court found the Secretary's arguments reasonable. *See Swiney*, *supra*. We note, however, that the fee-basis-care issue that was decided in this case is the identical issue that was determined by this Court in *Meakin*, *supra*, and that the Secretary's arguments were also the same. This Court in *Meakin* held that the Secretary's interpretation of the applicable statutory and regulatory provisions were contrary to "the plain meaning" of those provisions. *Meakin*, 11 Vet.App. at 186-87. In determining that the Secretary's interpretation of his own regulation was ***not*** to be given deference, the Court stated that "[s]uch deference in not warranted unless the interpretation 'sensibly conforms to the purpose and wording of the regulation[ ].'" *Meakin*, 11 Vet.App. at 187 (quoting *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151 (1991)).

Because the Court in *Meakin* held that ***the Secretary's interpretation*** was contrary to "the plain meaning" of the applicable statutory and regulatory provisions, *Meakin*, 11 Vet.App. at 186-87, we conclude that the Secretary's position as to regulatory interpretation at the administrative level did not have "'a reasonable basis in law and fact'", *Stillwell*, 6 Vet.App. at 302 (quoting *Pierce*, *supra*), and hold therefore that the Secretary's position at the administrative stage was not substantially justified as to the fee-basis-care issue. *See Felton*, *supra*; *see also L.G. Lefler, Inc.*

8

*v. United States*, 801 F.2d 387, 389-90 (Fed. Cir. 1986); *Devine v. Sutermeister*, 733 F.2d 892, 895 (Fed. Cir. 1984).

Having concluded that the Secretary was not substantially justified in his position at the administrative stage, the Court need not address whether the government's litigation position before this Court was substantially justified. *See Locher* and *ZP*, both *supra*.

*2. Rating Claims.* The Secretary makes no argument on this issue. Accordingly, the Court holds that the Secretary has not met his burden to show that his position as to the appellant's rating claims was substantially justified. *See West (Billy) v. West*, 13 Vet.App. 25, 27-28 (1999) (where Secretary does not make argument as to whether his position on particular matter was substantially justified he has not met his burden to show substantial justification as to that position). Alternatively, the Court notes that the Secretary conceded at the merits stage that as to the rating claims the Board had erred in failing "to discuss 38 C.F.R. § 4.16(c) and that the record of proceedings was inadequate because the Board breached its duty to assist by not securing a complete medical examination with respect to the appellant's level of impairment." *Swiney*, 1998 WL 637212, at * 1. The Court thus holds that the Secretary was not substantially justified in, at the least, his administrative position as to the rating claims.

### D. Special Circumstances

Belatedly, the Secretary argues that there are special circumstances here that make an award unjust. Feb. 4, 2000, Resp. at 9-11. Pursuant to section 2412(d)(1)(A), a court may not grant an EAJA award if "the court finds . . . that special circumstances made an award unjust." 38 U.S.C. § 2412(d)(1)(A). "'Special circumstances' is an affirmative defense as to which the government bears the burden of raising and demonstrating that such special circumstances militate against an EAJA award." *Chesser*, 11 Vet.App. at 502. This Court will find "special circumstances" where either (1) the Secretary has proffered "novel but credible extensions and interpretations of the law" or (2) in "situations 'where equitable considerations dictate an award should not be made'". *Ibid* (quoting *Doria v. Brown*, 8 Vet.App. 157, 162 (1995)). Such equitable considerations rely predominately upon assertions that an appellant has "'unclean hands'". *Chesser*, *supra* (quoting *Perry v. West*, 11 Vet.App. 319, 325 (1998)).

9

The Secretary does not contend here that the appellant has "unclean hands" but argues that this case involved a "novel but credible" argument that had not been litigated prior to this Court's opinion in *Meakin*, *supra*, which had been decided after the Secretary's litigation pleadings. "This 'safety valve' helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." H.R. Rep. No. 96-1418, at 11 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. However, we hold that the Secretary's "special circumstances" defense is unavailing here for the same reasons that the Secretary has not demonstrated "substantial justification" for his interpretation of his own regulation. *See L.G. Lefler*, *supra* (holding no special circumstances where, although issue had not previously been decided, the government "should clearly have recognized that . . . [t]here was . . . no tenable ground for [its conduct]"). Because the government has demonstrated neither reasonable justification for its position nor special circumstances making a fee award unjust, the appellant is entitled to reasonable attorney fees.

### E. Severability of Rating-Claim and Fee-Basis-Care-Claim Issues

The Secretary raises the issue of the severability of the rating-claim and fee-basis-care-claim issues. However, as we concluded in part II.B., above, the Secretary's position as to both the rating claims and the fee-basis-care issue was not substantially justified. Hence, there is no reason to consider the question of the severability of those matters. *See Calma v. West*, 12 Vet.App. 66, 69 (1998); *Elcyzyn v. Brown*, 7 Vet.App. 170, 177 (1994).

### F. Reasonableness of Fees

The Court will generally grant the requested amount of EAJA fees and expenses "where the hours claimed are not (1) unreasonable on their face, (2) otherwise contraindicated by the factors itemized in *Hensley*, 461 U.S. at 430 n.3, or *Ussery*[ *v. Brown*, 10 Vet.App. 51, 54 (1997)], for measuring reasonableness, or (3) persuasively opposed by the Secretary." *Chesser*, 11 Vet.App. at 501-02. Here, the attorney carried out very substantial representation of his client, filing four briefs, two motions, and a response.

The Secretary contends that the $7,000 in fees (56 hours at $125 each) that the appellant requested for the preparation and filing of the amicus brief in the *Quigley* appeal are not reasonable and should not be awarded because, in essence, the *Quigley* amicus brief was filed in a separate case.

The appellant argues that the *Swiney* and *Quigley* cases were so inextricably intertwined that the hours spent on *Quigley* should be compensable in the *Swiney* appeal, and that the appellant's attorney was compelled to file an amicus brief in *Quigley* in order to provide proper representation for the appellant in this case. The Court notes that the appellant has also requested $3,281.25 in fees (26.25 hours at $125.00) for preparation of his supplemental brief as to the fee-basis-care matter that was filed after *Quigley* was decided.

This presents an issue of first impression before the Court. The appellant filed an amicus brief in *Quigley* as to the Board's jurisdiction to review fee-basis-care determinations and, when that case was not decided on that issue, he subsequently incorporated the language from that amicus brief into his supplemental brief on the fee-basis-care issue. Pages 6-10 of the appellant's 19-page supplemental brief in this case appear to be a verbatim transcript of pages 3-8 of the amicus brief filed in *Quigley*.

The appellant here argues that if the issue had been decided in *Quigley*, that determination would have controlled in *Swiney* and that, in order to advocate fully for his client, given that the Court had denied his motion to consolidate, he was ethically required to become involved in *Quigley*. The appellant is not really claiming fees for being an amicus in *Quigley* but rather seeks fees for the work that he did there, on the ground that those hours of research and writing were on the same issue that he eventually presented to the Court as part of his supplemental brief in *Swiney*. Courts have considered fees for work outside the immediate appeal. *See Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1335 (D.C. Cir. 1982). "However, there must be a clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." *Ibid.*; *cf. Lundin v. Mecham*, 980 F.2d 1450, 1463 (D.C. Cir. 1992) (denying fees for amicus work in other cases where court "did not have jurisdiction over the related cases; those cases were neither an essential step in connection with, nor in any way controlling in the prosecution of, the suit below"). The appellant has made such a showing here.

The appellant claims 56 hours for the amicus brief in *Quigley* and 26.25 hours for the supplemental brief in this case. We decide not to reduce the 56 or 26.25 hours, because we agree with the appellant's argument that in order to represent his client properly he needed to file the amicus brief in *Quigley* (and thus all the work was really for Mr. Swiney (and Mr. Webb, of course))

11

and that the actual research and writing in *Quigley* can be transferred to *Swiney* because the attorney used the same text in *Swiney* and conformed it to the facts of this case.

We stress the narrow precedential effect of what we decide today. That is, the award of fees for hours in connection with the preparation of the amicus brief is very much a product of the unusual circumstances of this case, where the appellant had sought to consolidate his case with the case in which he eventually filed an amicus brief, where the Court had denied such consolidation and noted the availability of an amicus filing, and where the Court then had permitted the appellant to file such an amicus brief. The result here should not be read as permitting EAJA fees in case B based on hours worked to produce either (1) an amicus brief filed in case A where the attorney undertook representation in case B *after* filing the amicus brief or (2) a brief filed in case A where the attorney was representing the appellant in case A.

We also note that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Eckerhart*, 461 U.S. at 434-35. Although the Court may reduce fees if the appellant has been granted only limited success as to a particular matter, *see id*. at 436; *Smith (Wilfred)*, 8 Vet.App. at 328, 330-31, the Court has held that there is no inherent unreasonableness in fees charged for time spent in preparing briefs that support reversal even though the Secretary has, as here, already agreed to a remand, *see Smith (Wilfred)*, *supra* (holding that there was no reason to reduce appellant's award where Secretary was willing to agree to remand but appellant argued for reversal). The Supreme Court emphasized in *Farrar* that "'the degree of success obtained'" is "'the most critical factor' in determining the reasonableness of a fee award". *Farrar*, 506 U.S. at 114 (quoting *Eckerhart*, 461 U.S. at 436). As we stressed in part II.B., above, the remands won by the appellant in this case represent a high degree of success in this Court. That is even more so in light of the recent opinion by the U.S. Court of Appeals for the Federal Circuit in *Hensley*, *supra*, which might have the effect of placing further restrictions on this Court's power to reverse BVA decisions even where the Board has made "clearly erroneous" findings of fact.

Finally, as to our review of the amount of the award sought, the Secretary argues that the appellant's counsel "unduly protracted" the litigation in this Court by not agreeing to the remand proposed by the Secretary on the extraschedular-rating and TDIU claims. Secretary's Mar. 27, 2000, Resp. at 11-13 (citing 28 U.S.C. § 2412(d)(1)(C) ("court . . . may reduce . . . or deny an award, to

12

the extent that the prevailing party . . . unduly and unreasonably protracted the final resolution of the matter")). We have examined the appellant's arguments on these issues, Appellant's Dec. 27, 1996, Resp. at 2-4; May 16, 1997, Brief at 11-21; Sept. 5, 1997, Reply Brief at 2-8, and find that because they were not frivolous in seeking reversal the appellant did not drag out the litigation unreasonably. Rather, his representation was in the best tradition of full compliance with his professional obligation to represent his client "with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf". American Bar Association Model Rules of Professional Conduct, Rule 1.3, Comment [1], as adopted by this Court in Rule 1(b) of the Court's Rules of Admission and Practice. However, because he obtained less than full success on these severable issues, the Court will reduce the fee request by one-quarter of the hours claimed (176.8 hours) for work on these claims (by 44.2 to 132.6 hours) and will adjust the award accordingly. *See Eckerhart*, 461 U.S. at 437 (noting that Court has wide discretion in EAJA awards and that "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the . . . court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also Uttieri v. Brown*, 7 Vet.App. 415, 419 (1995) (reducing number of hours, based on reasonableness, including, in part, "time expended [unsuccessfully] on . . . reversal of the BVA decision as clearly erroneous").

### G. Supplemental EAJA Application

"The sole consideration in determining a fees-for-fees supplemental application is one of reasonableness." *McNeely (Allan) v. West*, 12 Vet.App. 162, 164 (1999); *see also Cook v. Brown*, 6 Vet.App. 226, 240 (1994). Here, the appellant has been successful on the EAJA application, and the Secretary has not contested his application for fees for fees. Thus, the Court will grant the amount requested in the supplemental EAJA application.

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the Court, having held that the Secretary's position was not substantially justified and that there are no special circumstances that would make an award unjust, grants in part the December 2, 1999, EAJA application, in the reduced amount of $27,009.69 ($26,856.25 for fees and the full amount for

expenses) and grants in full the March 26, 1999, supplemental EAJA application (in the amount of $718.75).

APPLICATION GRANTED IN PART AND SUPPLEMENTAL APPLICATION GRANTED IN FULL.

NEBEKER, *Chief Judge*, concurring in part: Bargaining for more than is offered is as legitimate when it comes to remedies on appeal as it is anywhere in a give-and-take world. So long as the basis for the greater remedy is not frivolous, seeking that remedy is quite consistent with counsel's professional obligation. In this instance, counsel's performance was most professional. The fact that the Court did not grant the appellant a reversal is, in my view, irrelevant to his entitlement to the full EAJA award.

To be sure, courts in some instances reduce EAJA awards when certain issues are raised but ultimately prove to be unavailing. However, engaging in such a calculation borders, of necessity, on the arbitrary. In this, as in most appeals, I can find no rational way to treat the matter as other than a unitary event. A lawyer may legitimately present a difficult "cutting edge" issue which the Court may choose to avoid deciding by ruling for that party on another less significant issue. The attorney should not be left to do so at the client's peril. As to oral argument, I question whether the Court could rationally cut the fee for preparation and presentation of the argument by the time devoted to an issue or issues which the Court chooses not to reach while ruling for that party on some other issue. I submit that the ultimate fact that an appellant prevails on a relatively simple issue--the kind of issue where one is likely to find a lack of substantial justification by the Secretary--hardly makes the selection and briefing of other issues a useless or noncompensable endeavor.

Accordingly, I would grant the fee applications in full. In light of the dissent, my vote necessarily includes the partial amount granted by the author of the opinion of the Court. Regrettably, in my view, the appellant will have to settle for the reduced award.

HOLDAWAY, *Judge,* dissenting: I respectfully dissent with the holding of the majority. I would deny the application for EAJA fees for three reasons. First, I would find that the appellant

14

has not established that he is the prevailing party in the underlying dispute before this Court. Second, I would hold that special circumstances exist which would prohibit the payment of EAJA fees. Third, I believe that the Secretary's litigation position was substantially justified.

As noted by the majority, in order to be eligible for EAJA fees, the appellant must show that he is the prevailing party. *See Stillwell v. Brown*, 6 Vet.App. 291 (1994). In the underlying dispute, the issue before the Court was the appropriate remedy for the Board's procedural errors. The Secretary conceded that the Board erred and argued that the Court should vacate the Board's decision and remand the matter for readjudication. The appellant expressly disagreed with the Secretary's concession of error and pressed this Court to reverse the Board's decision. After reviewing the arguments presented by the parties, the Court found the Secretary's remedy appropriate and remanded the matter to the Board. Therefore, the appellant is not the prevailing party for the purposes of EAJA fees because the Court found in favor of the Secretary. While the Court did remand the matter, the appellant simply did not prevail as he did not have any success in pressing for reversal as the exclusive appropriate remedy. As a result, I would find that the government, not the appellant, prevailed before this Court.

Assuming arguendo that the appellant prevailed on the merits, I would find that special circumstances exist which would prohibit the payment of EAJA fees. *See* 28 U.S.C. § 2412(d)(1)(A). The appellant would be, in effect, getting fees not based on what he did before the Court, but on the basis of the work the Secretary did in urging the remedy that was granted, i.e., remand. As noted above, the Secretary conceded that a remand was necessary. Nonetheless, the appellant argued that the Court should reverse the Board's decision. The impetus for the litigation before the Court was the appellant's refusal to accept the remand offered by the Secretary. Thus, the appellant's fees were wholly incurred in pursuing a reversal of the Board's decision and objecting to the remedy that was ultimately granted. If the Court were to permit EAJA fees in this instance, there would be no incentive for the appellant to accept the Secretary's concession of error and avoid needless litigation. *Cf.* 28 U.S.C. § 2412(d)(1)(C) ("The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or to deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.") In effect, by granting

15

EAJA fees in this instance, the Court would be granting the appellant a free license to incur EAJA fees even if he has no hope of actually obtaining the relief sought, i.e., reversal of the Board decision. The Secretary would also be disinclined to offer a concession of error and avoid the costs of litigation because he knows that an appellant will nonetheless attempt to obtain a reversal. Of course, if the appellant pressed for a reversal and was successful, he would be considered a prevailing party and be entitled to EAJA. In this way, there are appropriate incentives and disincentives for both parties to proceed and avoid unnecessary litigation. I do not condemn the appellant or his attorney for pressing for reversal. His attorney certainly was advocating zealously in the best interests of his client. I simply believe that the appellant should not be reimbursed under EAJA when that advocacy was not successful. If he was "successful," he was only successful in a marginal way and the fees, at a minimum, should be reduced, I think more drastically than the majority has reduced them, because of his minimal and partial "success."

Finally, I would find that the government's position was substantially justified. In *Stillwell*, the Court noted that it must take into account "the evolution of VA benefits law since the creation of the Court that has often resulted in new, different, or more stringent requirements for adjudication." 6 Vet.App. at 303. If the Board acted consistently with judicial precedent and VA policy, the Court must conclude that the Secretary's position was substantially justified. *See Olney v. Brown*, 7 Vet.App. 160, 162 (1994). In this case, prior to the Court's decision in *Meakin v. West*, 11 Vet.App. 183 (1998), the Board had consistently interpreted 38 C.F.R. § 20.101(b) to prohibit it from exercising jurisdiction over the Secretary's determination of whether fee-basis outpatient treatment was appropriate. Prior to *Meakin*, the Court had not previously held that the Board actually possessed jurisdiction to make that finding. *See Webb v. Brown*, 7 Vet.App. 122 (1994) (remanding claim for fee-basis outpatient treatment for inadequate reasons and bases). In *Meakin*, the Court reversed and remanded a Board decision which held that it did not have jurisdiction over that issue. *Meakin,* 11 Vet.App. at 186. The Court held that while the Board may be correct in that it does not have jurisdiction over the Secretary's ultimate authorization of fee-basis outpatient treatment, it nonetheless possessed jurisdiction to determine whether the claimant may initially be eligible for such treatment. *Id.* Immediately after the Court issued its decision in *Meakin*, the Secretary conceded that a remand was warranted in this case. By holding that it did not possess

jurisdiction, the Board applied the interpretation of the law which was in existence at that time. Although the Court later held that such an interpretation was inconsistent with 38 C.F.R. § 20.101(b), the interpretation was reasonable given that the evolving nature of this area of VA benefits law. *See Olney,* 7 Vet.App. at 162 (government's position prior to *Thurber v. Brown*, 5 Vet.App. 119 (1993), was substantially justified); *see also Webb*, 7 Vet.App. at 125-26 (Board's interpretation of 38 C.F.R. § 20.101(b) was reasonable) (Holdaway, J., dissenting). I would find that the Secretary's position was substantially justified in relying on a reasonable interpretation of 38 C.F.R. § 20.101(b). To find it unjustified, the majority appears to require the Board to have had the gift of prophecy at the time it rendered its decision. For this reason and the reasons described above, I would deny the appellant's application for EAJA fees. I hope the Secretary will seriously consider requesting an en banc hearing in this egregious case.