Randall C. SCARBOROUGH, Appellant,

v.

R. James NICHOLSON, Secretary of Veterans Affairs, Appellee.

No. 98–1590(E).

United States Court of Appeals for Veterans Claims.

Aug. 5, 2005.

Peter J. Sarda, of Raleigh, North Carolina, and Brian Wolfman, of Washington, D.C., were on the pleadings for the appellant.

Tim S. McClain, General Counsel; R. Randall Campbell, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Michele R. Katina, all of Washington, D.C., were on the pleadings for the appellee.

Before STEINBERG, Chief Judge,[1] and IVERS and GREENE, Judges.

---

1. Jonathan R. Steinberg became Chief Judge of the Court at noon on August 5, 2005.

GREENE, Judge:

Before the Court is (1) the appellant's October 4, 1999, application, filed through counsel, for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2) his December 9, 1999, amendment to that initial EAJA application, and (3) his June 10, 2004, supplemental EAJA application, which incorporates the original 1999 request. For the reasons that follow, the supplemental EAJA application, and by incorporation the original application, as amended, will be granted in part.

## I. BACKGROUND

This EAJA matter has a long history. Mr. Scarborough had appealed a July 6, 1998, Board of Veterans' Appeals (Board) decision that had found no clear and unmistakable error in a March 1976 VA regional office (RO) decision. That decision had denied him an award of service connection for chronic renal failure on the basis that the condition preexisted service. On July 9, 1999, the Court held that neither the 1976 RO nor the Board had addressed in their decisions the effect of the law of the presumption of sound condition existing at the time of the RO decision, and, therefore, vacated the Board decision and remanded the matter. Based on that remand, Mr. Scarborough filed with the Court an EAJA application, requesting payment at attorney rates of $200 and $175 per hour. After initially returning that application as prematurely submitted, the Court accepted it for filing on October 4, 1999—the same date on which mandate issued. On December 3, 1999, the Secretary moved to dismiss the EAJA application; he contended that because in his application Mr. Scarborough had failed to allege that the United States was not substantially justified, the application did not satisfy all of the jurisdictional require-

ments under the EAJA statute. *See* 28 U.S.C. § 2412(d)(1)(B) ("party [applying for EAJA fees] shall also allege that the position of the United States was not substantially justified"). On December 9, 1999, Mr. Scarborough attempted to amend his EAJA application to allege that VA's position lacked substantial justification. However, on June 14, 2000, the Court dismissed the application for lack of jurisdiction after finding that the application was jurisdictionally deficient pursuant to *Bazalo v. Brown*, 9 Vet.App. 304, 308 (1996) (en banc), *rev'd sub nom. Bazalo v. West*, 150 F.3d 1380, 1384 (Fed.Cir.1998), because when originally filed, within the 30–day filing period, it failed to allege that the government was not substantially justified. *Scarborough v. West*, 13 Vet.App. 530 (2000).

Mr. Scarborough appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). In December 2001, the Federal Circuit affirmed this Court's decision and held that the plain language of the EAJA requires the filing of an application within 30 days after the judgment in a case and that that filing must include an averment that the Secretary's position was not substantially justified. *Scarborough v. Principi*, 273 F.3d 1087 (2001), *vacated*, 536 U.S. 920, 122 S.Ct. 2584, 153 L.Ed.2d 774 (2002). Mr. Scarborough appealed that decision and in June 2002 the U.S. Supreme Court granted his petition for a writ of certiorari, vacated the Federal Circuit's opinion, and remanded the case to the Federal Circuit for consideration of the Supreme Court's then-recent opinion in *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002) (permitting a claimant under Title VII of the Civil Rights Act of 1964 to cure, by a "relation-back" theory, a complaint defect where a verification requirement was submitted after the complaint-filing deadline). *Scarborough*, 536 U.S. 920, 122 S.Ct. 2584,

153 L.Ed.2d 774. On remand, the Federal Circuit again ruled that dismissal of the application was appropriate; the Federal Circuit held that *Edelman* was distinguishable and that a lack-of-substantial-justification allegation in an EAJA application was a statutory jurisdictional requirement that had to be met within the specified 30–day time period. *Scarborough,* 319 F.3d 1346 (Fed.Cir.2003), *rev'd,* 541 U.S. 401, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). After being denied a rehearing and a rehearing en banc by the Federal Circuit, Mr. Scarborough appealed to the Supreme Court and was again granted certiorari. *Scarborough,* 539 U.S. 986, 124 S.Ct. 45, 156 L.Ed.2d 703 (2003). In May 2004, the Supreme Court reversed the Federal Circuit's decision and remanded the matter for consideration of the merits of the EAJA application. *Scarborough,* 541 U.S. 401, 124 S.Ct. 1856, 158 L.Ed.2d 674. The Supreme Court held that the allegation in the EAJA application that the Secretary's position was not substantially justified was merely a pleading burden to discourage irresponsible litigation and did not serve an essential notice-giving function. *Id.* at 416–17, 124 S.Ct. 1856. The Supreme Court rejected the Secretary's arguments that the relation-back doctrine under *Edelman, supra,* should not be applied by courts when considering EAJA applications, and that the EAJA's waiver of sovereign immunity requires meticulous compliance with each provision of section 2412. *Id.* at 418–20, 124 S.Ct. 1856.

On June 15, 2004, the Federal Circuit recalled its mandate, reinstated Mr. Scarborough's appeal, and remanded the matter to this Court with instructions to consider the merits of the EAJA application. *Scarborough v. Principi,* 102 Fed.Appx. 158 (Fed.Cir.2004). Following the filing of Mr. Scarborough's supplemental application for attorney fees and expenses (incorporating the initial application but reduc-ing the hourly rates requested for the law firm of Wallace, Creech & Sarda (Sarda firm) to $125 per hour), the parties filed a joint motion to dismiss the initial application; they noted that they had entered into an agreement to settle that matter. Following a February 2005 order of the Court requesting briefing on the effect, if any, of the Court's dismissal (rather than granting) of the initial EAJA application on the Court's jurisdiction to rule later on the supplemental EAJA application, the parties moved to withdraw the joint motion to dismiss. The parties also jointly moved the Court to grant the initial EAJA application. On March 25, 2005, the Court granted the motion to withdraw the joint motion to dismiss; the Court did not act on the joint motion to grant the initial application.

## II. APPLICABLE LAW

This Court has jurisdiction to award reasonable attorney fees and expenses. *See* 28 U.S.C. § 2412(d)(2)(F). Under the EAJA, fees shall be awarded to a prevailing party unless the Court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "It is unquestioned that EAJA fees are available for litigation over the EAJA application itself and that an award of fees and expenses for that purpose would generally follow from success in the basic EAJA application itself." *Cook v. Brown,* 6 Vet.App. 226, 240 (1994), *aff'd,* 68 F.3d 447 (Fed.Cir.1995). As to the hourly rate to be paid for attorney services under the EAJA, the statute states:

"[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be neces-

sary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. § 2412(d)(2)(A).

An EAJA application must be submitted within 30 days after final judgment in the action, must show that the applicant is a prevailing party and eligible for such fees and expenses, must include an itemized statement of the fees sought, and "shall also allege that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *Scarborough,* 541 U.S. at 408, 124 S.Ct. 1856; *Chesser v. West,* 11 Vet.App. 497, 499 (1998). Prior to this litigation, the Federal Circuit had held that an amendment made after the 30–day filing deadline may cure an application originally lacking a statement of eligibility to receive a fee (i.e., fee applicant's net worth does not exceed two million dollars). *See Bazalo,* 150 F.3d at 1383–84; *reversing Bazalo v. Brown,* 9 Vet.App. 304 (1996). However, the opinion may be read as implying that "the additional requirements enumerated [under the EAJA statute,] such as showing that the party prevailed and alleging that the United States was not substantially justified in its position" were jurisdictional requirements to be included in the EAJA application within the 30–day period. *Bazalo,* 150 F.3d at 1384. As noted above, the Supreme Court,

in its opinion stemming from Mr. Scarborough's initial EAJA application, held that the statutory requirement that an applicant allege that the position of the United States was not substantially justified may be accomplished beyond the 30–day filing deadline. *Scarborough,* 541 U.S. at 414–18, 124 S.Ct. 1856; *see also* 28 U.S.C. § 2412(d)(1)(B).

## III. EAJA APPLICATION AND ARGUMENTS

Mr. Scarborough seeks reimbursement for attorney fees and expenses for both his initial merits representation and for the "fees for fees" work. During the initial merits appeal and on the first appeal to the Federal Circuit, Mr. Scarborough was represented by Mr. Sarda of the Sarda firm. Following the Federal Circuit's affirmance of this Court's dismissal of the EAJA application, Mr. Scarborough was represented by the Public Citizen Litigation Group (PCLG).

Mr. Scarborough seeks EAJA fees for 115.25 hours expended by the Sarda firm on the initial appeal from the Board, and 176.5 hours spent on the fee litigation. Supplemental EAJA Application (Suppl.App.) at 5–6. He requests compensation for hours expended by a paralegal at the Sarda firm at $60 per hour (20.25 hours on the initial appeal and 3.75 on the fee litigation) for a total of $1,440. *Id.* at 11. He claims total attorney fees of $36,509 for the hours expended by the Sarda attorneys, compensated at the standard inflation-adjusted EAJA rate of $133 per hour for the work done on the initial appeal in 1999 (95 hours) and $138 per hour for the fee work performed thereafter (173 hours). *Id.*

For the hours expended by PCLG, Mr. Scarborough claims attorney fees for 357.2 hours spent on the fee litigation, and 42.4

hours spent preparing the supplemental fee application, for a total of 399.6 hours. *Id.* at 6–8, 11–12; *see also* Appellant's May 18, 2005, Fee Application Correction. He seeks standard-EAJA-attorney-rate compensation for the attorney hours spent preparing the fee application (42.24 hours) and for the hours billed by a more junior member of PCLG (24.8 hours for attorney Nannery). Suppl. App. at 10–12, 27–18. He contends, however, that Mr. Scarborough's representation by PCLG lead counsel Brian Wolfman and senior attorneys Morrison and Nelson is entitled to an enhanced rate. He argues that under the EAJA's "special factor" provision, the hours expended by PCLG in obtaining the Supreme Court remands warrant a greater rate of compensation than the standard inflation-adjusted EAJA attorney rate. *See* 28 U.S.C. § 2412(d)(2)(A). He maintains that rates corresponding to the *Laffey Matrix* rates for each year covered in the application (ranging from $320 to $380 per hour) are an appropriate "compromise rate," falling between what he states is the market rate for PCLG's attorneys (ranging from $450 to $600 per hour) and the standard EAJA rate. Suppl. App. at 26–28; *see also Covington v. District of Columbia,* 57 F.3d 1101 (D.C.Cir.1995) (describing *Laffey Matrix* as a schedule of charges reflecting the prevailing market rate for attorneys by years of practice, pursuant to *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983), *aff'd in part,* 746 F.2d 4 (D.C.Cir.1984)).

In response, the Secretary concedes that Mr. Scarborough has satisfied the EAJA requirements for his initial claim for attorney fees and expenses incurred during the merits stage of the underlying litigation. Secretary's April 11, 2005, Response (Sec. Resp.) at 4. The Secretary also relinquishes the opportunity to argue that the Court should make a separate substantial-justification determination for the "EAJA stage"

of the litigation, by stating: "The Supreme Court has held that under the EAJA, once these findings are made a claimant need not relitigate these issues in later claims for attorney fees." *Id.* (citing *Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990)). However, the Secretary does argue that the fees and expenses sought by Mr. Scarborough for the "fees for fees" litigation should be denied based upon the EAJA provision that gives the Court discretion to reduce the amount of an award or deny an award "to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). The Secretary contends that in this matter reimbursement for the fees-for-fees work is unreasonable because that litigation, in its entirety, was necessitated by Mr. Scarborough's failure in 1999 to allege, in his original application made during the 30-day application period, that the government was not substantially justified. The Secretary maintains that this "unjustified neglect" contravened this Court's Rules of Practice and Procedure and the then-binding caselaw precedent of *Bazalo, supra.* Sec. Resp. at 4–6. The Secretary recognizes that in *Fritz v. Principi,* the Court made a partial award for the fees-for-fees litigation, reimbursing an applicant for time spent pursuing arguments upon which his interpretation was ultimately vindicated, but denying an award for time spent on an "unreasonable" argument for an interpretation on which he had failed. *Fritz,* 17 Vet.App. 68, 72–73 (2003). The Secretary, however, suggests that the reasoning in *Fritz* is not applicable here because, unlike in *Fritz* where the prior caselaw was somewhat unclear and the appellant's arguments were vindicated, in Mr. Scarborough's case the EAJA-filing

requirements were clear at the time that he filed his original EAJA application and his "ultimate victory was fortuitous." Sec. Resp. at 9.

Mr. Scarborough's claim for enhanced fees for the PCLG representation also is contested. The Secretary argues that the legal practice by Attorney Wolfman and PCLG does not warrant the application of the "special factor" criteria enunciated in *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). The Secretary contends that the fees-for-fees litigation did not involve a complex matter but rather was simply a statutory-interpretation question. *Id.* at 14. He further contends that although PCLG attorneys may possess expertise in Supreme Court litigation, such ability, acquired through legal practice, is not the type of specialty contemplated for an enhanced rate under the EAJA. *Id.* at 14–15.

Concerning the EAJA application's specific itemized fee requests, the Secretary objects to, as unreasonable, the time spent by Mr. Sarda conferring with PCLG following its appearance in the case. The Secretary argues that PCLG was retained for its knowledge on EAJA matters and Supreme Court litigation and, thus, did not require Mr. Sarda's continued input. The Secretary also contends that the 42.2 hours billed for preparation of the supplemental fee application is "unreasonable on its face." *Id.* at 21. He suggests that six hours would be a reasonable amount of time for preparing the application. *Id.* The Secretary also "questions the rather large blocks of time claimed by attorney Wolfman on numerous occasions," and contends that billing judgment was not exercised in this regard by PCLG. *Id.* at 21–22. In reply, Mr. Scarborough contends that he did not unduly and unreasonably protract the litigation; that the Secretary's interpretation of *Fritz, supra,* is incorrect

and that *Fritz* in fact supports the granting of his EAJA application; that the hours sought are reasonable and not excessive; and that the hours claimed by PCLG are entitled to payment at an enhanced rate. Appellant's April 22, 2005, Reply to Sec. Resp. (Appellant's Reply) at 1–19. Additionally, he requests fees for 23.6 hours of time, at a rate of $155 per hour, for preparation of that reply. *Id.* at 19–20.

## IV. ANALYSIS

### A. General Eligibility for EAJA Fee

■ The Court has jurisdiction to award reasonable attorney fees and expenses to a prevailing party unless the Court finds the position of the Secretary was substantially justified or that special circumstances exist making an award unjust. 28 U.S.C. § 2412(d); *Evington v. Principi,* 18 Vet. App. 331, 333 (2004). In *Sumner v. Principi,* this Court observed that Supreme Court cases awarding prevailing-party status "either require the ultimate receipt ·of a benefit that was sought in bringing the litigation, i.e., the award of a benefit, or at a minimum, a court remand predicated upon administrative error." *Sumner,* 15 Vet.App. 256, 264 (2001) (en banc) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), and *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993)), *aff'd sub nom. Vaughn v. Principi,* 336 F.3d 1351 (Fed.Cir.2003) (appeal consolidated with appeal in *Sumner v. Principi).* "In order for a remand to have been predicated upon administrative error, the remand must either (1) have been directed in a Court opinion, decision, or order that contained a Court recognition of administrative error or (2) have been granted on the basis of a concession of error by the Secretary." *Gordon v. Prin-*

*cipi,* 17 Vet.App. 221, 223 (2003). The Secretary does not contest that Mr. Scarborough is a prevailing party; the Court agrees that because the Court's 1999 remand was based on a recognition of administrative error, Mr. Scarborough has achieved prevailing-party status.

On the question whether the Secretary's position was substantially justified, once an allegation of lack of substantial justification is made, the burden is on the Secretary to prove that VA was substantially justified in its administrative and litigation positions. *See Cullens v. Gober,* 14 Vet. App. 234, 237 (2001) (en banc); *Locher v. Brown,* 9 Vet.App. 535, 537 (1996). The position of VA is substantially justified when it is "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. That determination is based not on any single factor, but on the totality of the circumstances, which includes consideration of, "among other things, 'merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties'" before the Court. *White v. Nicholson,* 412 F.3d 1314, 1317 (Fed.Cir.2005) (quoting *Johnson v. Principi,* 17 Vet.App. 436, 442 (2004)); *see also Stillwell v. Brown,* 6 Vet.App. 291, 302 (1994).

The Secretary concedes that his position at the administrative stage of the proceedings was not substantially justified and, thus, that Mr. Scarborough has cleared the substantial-justification hurdle for EAJA-award eligibility. This position is consistent with *Jean, supra,* where the Supreme Court stated that "EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Jean,* 496 U.S. at 161–62, 110 S.Ct. 2316. The *Jean* court concluded:

"The single finding that the [g]overnment's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' thus operates as a one-time threshold for fee eligibility." *Id.* at 160, 110 S.Ct. 2316; *see McNeely v. West,* 12 Vet.App. 162, 164 (1999) (stating that "sole consideration in determining a fees-for-fees supplemental application is one of reasonableness"). Had the Secretary raised a substantial-justification defense, an interesting question might have been posed as to whether the EAJA litigation here, and the Secretary's action defending precedent on the jurisdictional nature of the substantial-justification allegation, would qualify as an exception to the unitary-civil-litigation theory of *Jean, supra. See Calma v. West,* 12 Vet.App. 66, 69 (1998) (discussing exception to general rule of one substantial-justification determination when, inter alia, the "action involves distinct and severable claims"). However, the Secretary did not assert that he was substantially justified and we therefore will not address that question. *See Cook,* 6 Vet.App. at 237 (holding that where the Secretary did not present a "substantially justified" defense, the Court "need not decide" that issue); *see also Evington,* 18 Vet.App. at 334.

Additionally, the Secretary did not argue under 28 U.S.C. § 2412(d)(1)(A), that any "special circumstances make an award unjust" in this matter. This affirmative-defense argument, if raised, might also have posed an interesting question where, as here, in a matter wholly separate from the underlying merits appeal VA defended caselaw from this Court and the Federal Circuit. However, the Secretary also did not raise this defense, and therefore it will not be considered. *See Perry v. West,* 11 Vet.App. 319, 325–27 (1998) (discussing special circumstances affirmative defense as potentially available to bar part of EAJA fees sought); *Doria v. Brown,* 8 Vet.App. 157, 162 (1995) (suggesting that

where (1) "government proffers novel but credible extensions and interpretations of the law" or (2) where "equitable considerations" dictate against an award, special circumstances may exist making EAJA award unjust).

### B. Reasonableness of Fee

■ The remaining question is whether the claimed fees are reasonable. *See* 28 U.S.C. § 2412(d)(2)(A); *Teten v. Principi,* 16 Vet.App. 112, 118 (2002); *Perry,* 11 Vet.App. at 327. Although the amount of the fees claimed by Mr. Scarborough is significantly larger than the great majority of applications filed with this Court, few cases span the length of time of this case and have involved to such great extent every judicial-appellate level (indeed, two full rounds thereof) available to veterans. Thus, fees totaling nearly $100,000 are not, per se, unreasonable. Mr. Scarborough, however, has the burden of demonstrating the reasonableness of this fee. *See Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

#### 1. *28 U.S.C. § 2412(d)(1)(C)*

■ The Secretary urges the Court to deny any fees-for-fees award, arguing that such fees are unreasonable because that entire phase of the litigation was generated by Mr. Scarborough's counsel's error and any award would "reward [the] appellant's attorney for his unjustified neglect." Sec. Resp. at 5. "The Court, in its discretion, may reduce the amount to be awarded ... or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). In reducing the amount of an award, the Court has wide discretion and may consider a number of factors in discounting a requested fee. *See Jean,* 496 U.S. at 163, 110

S.Ct. 2316 (stating court may recognize and discount "[e]xorbitant, unfounded or procedurally defective fee applications— like any other improper position that may unreasonably protract proceedings"); *Chiu v. United States,* 948 F.2d 711, 713 (Fed.Cir.1991). In its discretion to award to Mr. Scarborough what it considers a reasonable amount, the Court will reduce the amount of fees sought; however, we do not find that Mr. Scarborough's actions in this matter were "unreasonably dilatory conduct" that would justify a broad-brush denial of a large portion of his claimed fees. *See Jean,* 496 U.S. at 161, 110 S.Ct. 2316 (suggesting that unreasonably dilatory conduct could justify denying fees for that portion of the litigation).

The Secretary also argues that *Fritz, supra,* supports a total reduction of the fees for fees sought because in that case the Court awarded fees for time spent only on those matter where the appellant's interpretation was ultimately vindicated, and refused an award for time spent on an argument that had been rejected by the Court. *See Fritz,* 17 Vet.App. at 72–73. The Court agrees that *Fritz* bears on the issue presented in Mr. Scarborough's supplemental application, but disagrees with the Secretary's interpretation of *Fritz.* Here, like the arguments in *Fritz* that the Court found *had* been vindicated, Mr. Scarborough's pursuit of a determination that his EAJA application was complete and timely and should be ruled upon on the merits, was likewise vindicated by the Supreme Court. Accordingly, we do not find that Mr. Scarborough's pursuit of that determination, ultimately obtaining a favorable ruling, unreasonably protracted the litigation. *See id.*

Further, in *Swiney v. Gober,* this Court considered the Secretary's contention that an EAJA award was unreasonable because, in refusing to accept the Secretary's

proposed remand offer and arguing instead for reversal, the appellant "unduly protracted" the litigation, which ultimately resulted in a remand. *Swiney,* 14 Vet. App. 65, 74–75 (2000). The Court stated:

> [B]ecause [the appellant's arguments] were not frivolous in seeking reversal the appellant did not drag out the litigation unreasonably. Rather, his representation was in the best tradition of full compliance with his professional obligation to represent his client 'with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.'

*Id.* at 74 (quoting Model Rules of Professional Conduct, Rule 1.3, Cmt. 1). Ultimately, however, the award was reduced because Mr. Swiney had obtained "less than full success" on what the Court considered severable issues. *Id.* at 75; *see also Chesser,* 11 Vet.App. at 504–05 (reducing fees-for-fees award based on "problems in the appellant's EAJA pleadings and [the fact] that these problems protracted the litigation"). Here, despite this Court's initial dismissal of his EAJA application and the Federal Circuit's two decisions affirming that dismissal, Mr. Scarborough zealously pursued his position and ultimately prevailed. Because his appeals found success and without his appeal his EAJA application would have remained dismissed, the Court is unwilling to find that Mr. Scarborough acted at all in a dilatory manner. *See Fritz, supra; see also* Webster's New World Dictionary 385 (3d Coll. ed.1988) (defining "dilatory" as "causing or tending to cause delay; meant to gain time, defer action, etc.").

### 2. *Entitlement to "Special Factor" Rate Enhancement*

■ Mr. Scarborough contends that the attorney fees billed by PCLG are entitled to reimbursement at a rate higher than the standard-EAJA-attorney rate, under the "special factor" provision of 28 U.S.C. § 2412(d)(2)(A). In *Pierce, supra,* the Supreme Court examined the "special factor" provision of the EAJA justifying a higher rate and held that the "limited availability of qualified attorneys for the proceedings involved" language of section 2412(d)(2)(A) must refer to attorneys qualified "in some specialized sense, rather than just in their general legal competence." *Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. The Supreme Court stated that such qualification refers to attorneys having "some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Id. Pierce* cautioned against a "broad and general application" of the special factors exception, and recognized examples of such qualifications to include an identifiable practice specialty, such as patent law, or knowledge of foreign law or language. *Id.* at 572–73, 108 S.Ct. 2541. *Pierce* concluded that the "special factor" exception is allowed when such qualifications are "necessary" and can be obtained only at rates in excess of the cap. *Id.* at 572, 108 S.Ct. 2541. Rejecting the request for a rate enhancement in the *Pierce*-EAJA application, the Supreme Court held that "novelty and difficulty of the issues," "the undesirability of the case," the "work and ability of counsel," and "the results obtained," were not "special factors," but rather "little more than routine reasons why market rates are what they are." *Id.* at 573, 108 S.Ct. 2541.

Mr. Scarborough argues that PCLG's attorneys qualify for "special factor" enhancement because their practice in Supreme Court and EAJA litigation satisfies the "identifiable practice specialty" requirement under *Pierce, supra.* Suppl. App. at 17. He cites no cases that have so held. *See id.* at 12–28. In support of that

position he argues (1) that there are a limited number of attorneys experienced in Supreme Court litigation, (2) that such litigation involves two unique components—obtaining certiorari and persuading the court on the merits, and (3) that PCLG is among those limited practitioners and that they successfully persuaded the Supreme Court at both the certiorari and merits stages, twice. *Id.* at 14–25. Mr. Scarborough refers repeatedly to an affidavit by Mr. David Frederick attached to the supplemental application. *Id.* at Exhibit (Exh.) 5. Mr. Frederick, a former Supreme Court clerk and Supreme Court practitioner, avers that Supreme Court litigation is a new expertise and attests to the quality and experience of PCLG in that area. *Id.* Mr. Scarborough further maintains that his need for an attorney experienced in Supreme Court litigation parallels the government's reliance on the Justice Department and the Solicitor General's office to argue cases on appeal to the Federal Circuit or the Supreme Court. *Id.* at 19–20. He also states that Attorney Sarda was not going to pursue the appeal beyond the Federal Circuit's initial denial and, therefore, that PCLG's taking the case was the only way the appeal remained alive. *Id.* at 25.

There is limited caselaw by this Court on the EAJA-"special factor" issue. In *Elcyzyn v. Brown,* the Court considered an EAJA applicant's request for enhanced fees for his lawyer who claimed to be a veterans law specialist under the "special factor" provision. *Elcyzyn,* 7 Vet.App. 170 (1994). Relying on *Pierce* to reject an enhanced fee, the Court held that the practice of veterans law is not a specialty requiring distinctive knowledge or specialized skill, but is instead analogous to the practice of administrative law requiring general lawyerly knowledge. *Id.* at 182; *see also Jurgens v. Brown,* 8 Vet.App. 197

(1995) (denying special-factor enhancement based on contingency-fee agreement).

Other federal courts of appeal have had more opportunity to interpret the "special factor" provision. Recently, in *Select Milk Producers, Inc. v. Johanns,* the U.S. Court of Appeals for the District of Columbia Circuit (D.C.Circuit) reversed the district court's award of enhanced fees based on the EAJA applicant's specialized knowledge of the "extremely complex" federal milk marketing regime. *Select Milk Producers, Inc.,* 400 F.3d 939, 950–51 (D.C.Cir.2005). Relying on *Pierce, supra,* the D.C. Circuit stated that expertise acquired through practice in a particular field of administrative law is insufficient to qualify as specialized knowledge justifying an enhanced fee. *Id.* at 951; *see F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598–99 (D.C.Cir.1996) (stating that nothing in text or legislative history of the EAJA suggests Congress intended to make all practice of administrative law in technical fields eligible for rate enhancement and holding that specialization in firearms law acquired through practice does not constitute EAJA special factor). In *Truckers United for Safety v. Mead,* the D.C. Circuit likewise refused an enhanced rate for claimed specialized expertise in the trucking industry. *Truckers United for Safety,* 329 F.3d 891 (D.C.Cir.2003). The court reiterated that it would not construe expertise gained from law practice as a specialized skill. *Id.* at 894–96. The court also considered the attorney's highway-law expertise gained through non-law-practice experience, but rejected this as a special factor warranting enhanced fees, instead finding that expertise neither "needful" nor "critical" to the litigation "but rather—at best—tangential to the litigation." *Id.* at 896.

In 2004, in *Role Models Am., Inc. v. Brownlee,* the D.C. Circuit held that the

quality of the representation, the effort and expertise of counsel, the actual time expended, the exceptional results obtained, and counsel's having prepared the appeal on a short deadline, did not support awarding an enhanced fee under the "special factor" section of the EAJA. *Role Models,* 353 F.3d 962 (D.C.Cir.2004). Again citing *Pierce,* the D.C. Circuit rejected these factors as the type of broad and general skills that lawyers use on a regular basis. *Id.* at 968–69; *see In re Sealed Case 00–5116,* 254 F.3d 233, 236 (D.C.Cir.2001) (stating: "Although federal election law involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice.").

Courts have of course recognized special factors and awarded enhanced fees in certain instances. The U.S. Court of Appeals for the Seventh Circuit's decision in *Muhur v. Ashcroft,* in the context of immigration law, held that although immigration lawyers are not always entitled to enhanced fees, when a lawyer "brings relevant expertise to a case, such as knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law, in which such expertise is needed to give the alien a fair shot at prevailing," an enhanced rate may be appropriate. *Muhur,* 382 F.3d 653, 656 (7th Cir.2004); *see Jean v. Nelson,* 863 F.2d 759, 775 (11th Cir.1988) (suggesting that enhanced fees may be appropriate for attorneys with special expertise in immigration law or foreign language, but rejecting as "special factors" the pro bono nature of the case, the vindication of public rights, and the emotional hardship on counsel) *aff'd sub nom. Commissioner, INS, supra; see also Love v. Reilly,* 924 F.2d 1492, 1497 (9th Cir.1991) (suggesting that environmental litigation may be a practice specialty requiring distinctive knowledge); *Wilkett v. Interstate*

*Commerce Com.,* 844 F.2d 867, 876 (D.C.Cir.1988) (recognizing potential "special factor" when exceptional and unusual delay in awarding fees not attributable to negligence or improper conduct by prevailing party).

■ We are persuaded by the reasoning of *Pierce, supra,* and the more narrow interpretation of the District of Columbia Circuit cases discussed above, that enhanced fees based on a "special factor" are only available when an attorney demonstrates expertise based on training or activity outside of the practice of law, and when that expertise was essential to the representation. *See Pierce, Select Milk Producers, Role Models, Muhur,* and *F.J. Vollmer,* all *supra.* We therefore reject Mr. Scarborough's argument that, under *Pierce,* PCLG's specialization in Supreme Court litigation constitutes an "identifiable practice specialty" justifying enhanced fees. *See Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. Although PCLG's practice is commendable, we are not convinced that practice before the Supreme Court, the court with the broadest subject-matter jurisdiction of any court, constitutes, per se, a specialty practice justifying an enhanced fee. Although PCLG has demonstrated expertise in its Supreme Court practice, we believe that this proficiency is akin to a specialty in a technical or narrow field of law (as compared to knowledge of a foreign language or culture), and equates to "an extraordinary level of the general lawyerly knowledge" that *Pierce* cautioned against recognizing as an EAJA "special factor." *Id.; see Select Milk Producers, Role Models, Muhur,* and *F.J. Vollmer,* all *supra.*

Likewise, we do not find that PCLG's expertise was a qualification "necessary" for Mr. Scarborough's representation. *See Pierce,* 487 U.S. at 572, 108 S.Ct. 2541.

Mr. Scarborough's Supreme Court victory was on a narrow question of statutory interpretation, involving legislative language certainly subject to and having been given differing readings, but not an extremely complicated matter. *See Role Models,* 353 F.3d at 968–69. Further, comparing the "special factors" rejected by *Pierce* to the claimed special factors here provides instruction for reviewing the arguments proffered by Mr. Scarborough. *Pierce* rejected such factors as the "work and ability of counsel" and the "results obtained" as overly broad and too general to qualify as "special factors." 487 U.S. at 573, 108 S.Ct. 2541. We have no doubt that PCLG provided to Mr. Scarborough an extraordinary level of legal representation, and we applaud PCLG's efforts and the excellent result secured for Mr. Scarborough. However, for the reasons discussed above, these factors do not justify an enhanced rate for PCLG's work above the standard-EAJA-attorney rate. Accordingly, Mr. Scarborough's request for an enhanced fee under 28 U.S.C. § 2412(d)(2)(A) is denied.

3. *Other Reasonableness Considerations*

In determining reasonableness, the Court will consider whether the hours claimed are (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley v. Eckerhart,* 461 U.S. 424, 430, n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), or *Ussery v. Brown,* 10 Vet. App. 51, 53 (1997); or (3) persuasively opposed by the Secretary. *McCormick v. Principi,* 16 Vet.App. 407, 413 (2002); *Chesser,* 11 Vet.App. at 502. We "may consider a number of factors, including whether the work performed was duplicative[, whether] an attorney takes extra time due to inexperience, or [whether] an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-attorneys." *Ussery, supra.*

We may also "properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts." *Vidal v. Brown,* 8 Vet.App. 488, 493 (1996).

■ The Secretary contests as unreasonable the fees claimed for the time spent by attorney Sarda consulting with and reviewing the pleadings of PCLG after their entry of appearance in the case. Sec. Resp. at 19–20; *see* Suppl. App. Exh. 3 (itemizing 43 hours for time spent by Mr. Sarda following PCLG's appearance). Mr. Scarborough responds that it was necessary for Mr. Sarda to work with PCLG "because it was Mr. Sarda who had handled the case below, knew the underlying facts, had access to the record, and had a longstanding relationship with the client." Appellant's Reply at 11. We are not persuaded by Mr. Scarborough's assertions, and find that many of the hours spent by Mr. Sarda co-counseling with PCLG are unreasonable in this matter. *See Blum, supra.* Although some amount of communication between Mr. Sarda and PCLG would be expected and reasonable, the matter with which Mr. Sarda was familiar, i.e., the merits of Mr. Scarborough's underlying case, had no bearing whatsoever on the EAJA arguments presented by PCLG. Further, in filing the original 1999 EAJA application too early, without a substantial-justification allegation (done twice), and with an incorrect fee amount (done twice), Mr. Sarda's contribution as a co-counsel and advisor to PCLG, a firm which entered the case because of its proven track record of success in the EAJA field, would seem questionable. Accordingly, we hold that the majority of the time spent by Mr. Sarda collaborating with PCLG was unnecessary and unproductive and the Court will reduce by 25 hours the attorney time requested for Mr. Sarda. *See Ussery* and *Vidal,* both *supra.*

The Secretary also contests as unreasonable the "rather large blocks of time claimed by attorney Wolfman on numerous occasions." Sec. Resp. at 21. In *Andrews v. Principi*, the Court excluded as unreasonable several hours billed in large blocks with minimal itemized descriptions of how the attorney time was spent. *Andrews*, 17 Vet.App. 319, 322–23 (2003). The Court admonished counsel for the lack of specificity and detail in the billing statement, particularly for such tasks as reviewing the medical history or claims file. *Id.* However, here we disagree that the level of detail in Mr. Wolfman's billing statement is insufficient, or that it is on its face unreasonable. Mr. Wolfman drafted 12 pleadings for the Federal Circuit and the Supreme Court (totaling about 130 pages), and his descriptions corresponding to the time spent on those tasks, such as the 8.5 hours on March 4, 2002, identified as "work all day researching and writing argument section of petition," the 8 hours on April 28, 2003, spent "prepar[ing] first draft of cert petition; follow up research; assemble appendices, etc.," or the 19.3 hours spent researching and drafting particular sections of his Supreme Court brief on October 14, 15, and 16, 2003, are reasonable in this instance. *See Chesser*, 11 Vet.App. at 501 (stressing that "Court has wide discretion in the award of attorney fees under the EAJA"); Suppl. App. at Exh. 2. Furthermore, because Mr. Scarborough's attorneys stated that they exercised billing judgment, and certainly achieved for him tremendous success in what the Court concludes was an efficient manner, we consider the challenged so-called block-billed hours to have been reasonably expended and will grant them in full. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (identifying "results obtained" as an important factor in determining reasonableness of fee).

Regarding the 42.4 attorney hours claimed by Mr. Scarborough for preparing the supplemental fee application, we reject the Secretary's bald contention that this request is unreasonable and that only six hours should be awarded because such preparation "should entail little more than a copy of [the a]ppellant's counsel's billing record and a recitation describing the efforts made to exercise billing judgment." Sec. Resp. at 21. The Secretary's position belies the detail required to produce a complete and comprehensive application, including sufficient detail of a proceeding continuing over four years and computing inflation-adjusted hourly rates for each of those years. In his reply, Mr. Scarborough defends as necessary the time spent preparing the application, but concedes that the hours requested for preparation of the fee application should be reduced for the time spent arguing for an enhanced fee should the Court deny that request. *See* Reply at 13, n. 6. The Court agrees, and will award fees for 28 hours expended on supplemental-application preparation (reducing the request by 14.4 hours). *See Swiney*, 14 Vet.App. at 75 (reducing fees by one quarter where counsel obtained less than full success on arguments for reversal); *Ussery*, 10 Vet.App. at 53 (discussing appropriateness of reducing fee sought when appellant does not prevail on all claims presented); *Elcyzyn*, 7 Vet.App. at 177 (discussing Court's "discretion" and "flexibility" in determining fee reduction for nonprevailing claim). In its discretion, given that one of the four issues addressed in Mr. Scarborough's reply was the enhanced-rate matter, the Court will reduce by one-quarter the 23.6 hours requested for time expended by Mr. Scarborough's counsel in preparing the April 22, 2005, reply to the Secretary's response, and will award 17.5 hours for that preparation. *See Chesser, supra.*

### C. Expenses

Mr. Scarborough requests reimbursement of $3,418.16 in expenses, consisting in large part of printing and copying costs related to his briefs and other submissions to the Supreme Court, as well as costs incurred for postage and transportation. Suppl. App. at 28. The Secretary does not contest these fees. In its discretion, the Court finds the expenses sought reasonable and of the nature customarily charged to a client, and will grant reimbursement of the expenses requested in full. *See Doria,* 8 Vet.App. at 165; *March v. Brown,* 7 Vet.App. 163, 169–70 (1994); *Cook,* 6 Vet.App. at 237–40.

### V. CALCULATIONS

Based on the above discussion and analysis, the Court finds reasonable an award of $34,464.50 for the work of the Sarda firm ($12,635 for the initial merits adjudication (95 hours × $133 per hour), $20,389.50 for the fee work (147.75 × $138 per hour), and $1,440 for paralegal time (24 hours × $60 per hour)); $58,975.40 for the work of PCLG ($17,352 for work in 2002 (120.5 hours × $144 per hour), $34,794.90 for work completed in 2003–04 (236.7 hours × $147 per hour), $4,116 for preparation of the supplemental fee application (28 hours × $147 per hour), and $2,712.50 for preparation of Mr. Scarborough's reply (17.5 hours × $155 per hour)); and $3,418.16 in expenses, for a total award of $96,858.06 in EAJA fees and expenses.

### VI. CONCLUSION

Upon consideration of the foregoing and the pleadings in this matter, Mr. Scarborough's supplemental EAJA application, and by incorporation original EAJA application, is GRANTED in PART. A total amount of $96,858.06 is awarded for EAJA fees and expenses. The parties' joint motion to grant the initial fee application is denied as moot.